UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JODY PORTIER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1717** |
| **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY** | **SECTION "B" (4)** |

**ORDER AND REASONS**

Before the Court are defendant Hartford Life and Accident Insurance Company's ("Hartford") Motion for Decision and Judgment on the Administrative Record (Rec. Doc. 11), plaintiff Jody Portier's opposition (Rec. Doc. 18), and Hartford's reply (Rec. Doc. 22). Also pending before the Court is Portier's Motion for Judgment under Federal Rule of Civil Procedure 52 on ERISA Administrative Record (Rec. Doc. 15) and Hartford's opposition (Rec. Doc. 20). For the following reasons,

**IT IS ORDERED** that Hartford's motion be **GRANTED** and that Portier's motion be **DENIED**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case concerns Jody Portier's challenge of Hartford's decision to terminate long-term disability ("LTD") benefits he had been receiving under the LTD Policy sponsored by Portier's former employer. Rec. Doc. 1. Hartford argues that it had full discretion to determine whether Portier was eligible for LTD benefits and that its decision to terminate Portier's benefits was amply supported by the evidence available to it. Portier argues that Hartford disregarded critical information, including his self-reported complaints about his symptoms and that Hartford's decision to terminate his benefits was therefore arbitrary and capricious. At issue is whether the administrative record, documenting the medical evidence and self-reported complaints about

1

Portier's impairments, support Hartford's decision to terminate Portier's benefits or warrants a remand.

The Policy, and this action, are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001, et seq. The Policy sets forth ERISA claim procedures and details the administration and handling of claims. Hartford provided claims administration functions and duties under the Policy and provided decisions on Portier's request for LTD benefits. Under the Policy, Hartford had "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." Rec. Doc. 9-1 at 26.

On March 16, 2021, Hartford approved an earlier application Portier had submitted for LTD benefits. Rec. Doc. 9-2 at 62. Portier received LTD benefits under the Policy from February 3, 2021, to February 2, 2023—for twenty-four (24) months—under the Policy's "Own Occupation" or "Your Occupation" standard. *Id*. To qualify for LTD benefits under the Policy, an applicant must meet the Policy's definition of "disabled." *Id*. The Policy defines "disabled" as being "prevented from performing one or more of the Essential Duties of" either: 1) "your occupation" during an "elimination period, 2) "your occupation" for the 24 months following the elimination period, and 3) after the 24-month period, any occupation. Effectively, if a claimant received benefits for 24 months following the elimination period, they could only continue to qualify as "disabled" if they could show that they are prevented from performing one of more of the essential duties of *any* occupation. Rec. Doc. 9-3 at 58. Portier received benefits under the Policy because his disability prevented him from performing his occupation, i.e., he met the "Your Occupation" standard for disability.

After the twenty-four (24) month period elapsed, however, the definition of "disability" changed from the "Your Occupation" standard to the "Any Occupation" standard. Hartford

2

determined that, effective February 2, 2023, Portier would not meet the Policy's "Any Occupation" definition of disabled and would therefore have his benefits terminated as of that date. Rec. Doc. 9-3 at 57.  Hartford based its decision on information and documentation from Portier's treating physician, Dr. Vinod Nair, as well as an Independent Physician Review ("IPR") from Dr. Darius J. Marhamati. Rec. Doc. 9-3. Dr. Nair and Dr. Marhamati disagreed about Portier's ability to work. Dr. Nair opined that Portier was unable to work in any capacity due to chronic angina and coronary artery disease. Rec. Doc. 9-3 at 21.  While Dr. Marhamati agreed with Dr. Nair's diagnosis of coronary artery disease and angina, he opined that limited evidence supported Dr. Nair's "no work" restriction and instead concluded that Portier could work full-time for 8 hours each day with several restrictions. *Id*.

In light of Dr. Marhamati's IPR, on June 29, 2022, Hartford obtained an Employability Analysis Report ("EAR") to assess relevant occupations for which Portier may be employable. Rec. Doc. 9-13 at 18. The EAR stated that there were several occupations, considering Portier's physical limitations, that were suitable. *Id*. at 21. Among the occupations listed was "Superintendent, Maintenance" which was described as a sedentary job with flexibility with "standing, walking or taking stretch breaks after a period of sitting[.]" *Id*. The EAR stated that Portier had transferrable skills for this occupation and that the occupation was in the same service industry as his past occupation. *Id*. Finally, the EAR noted that the occupation existed in reasonable number in the national economy and that Portier could perform the functions of the job with minimum training in tools or materials. *Id*. at 22. Based on the information gathered, Hartford informed Portier in a July 21, 2022 claim decision letter that he was not prevented from performing the essential duties of any occupation and therefore did not satisfy the Policy's definition of disabled.

3

On November 1, 2022, Dr. Nair—Portier's treating physician—wrote to Hartford informing it of his medical opinion that Portier's impairments prevented him from being unable to perform "one of more of any type of essential job duties at any level of employment that includes minimal physical or stress related job requirements." Rec. Doc. 9-13 at 5. In response, on December 13, 2022, Hartford wrote to Portier explaining that though it had reviewed Dr. Nair's letter and supporting documentation, it stood by its initial determination that Portier's LTD benefits would be terminated on February 2, 2023. Rec. Doc. 9-3 at 64.

On January 25, 2024, Portier appealed Hartford's July 21, 2022 claim decision. Rec. Doc. 9-11 at 16. Submitted with the appeal was a December 20, 2023 affidavit in which Portier contended that he was disabled because he suffered from coronary artery disease, Crohn's disease, knee osteoarthritis, trigger finger, obesity, sleep apnea, and diabetes. Rec. Doc. 9-7 at 40. Portier also identified several medications he took which he asserted caused drowsiness, fatigue, and excessive diarrhea and urination. *Id*. at 40–41.  Portier stated that stress was a primary trigger of his cardiac symptoms. *Id*. at 41. Portier explained that events which stress him include being pressured to complete a task, having to explain a situation to work management or customers, experiences with irate customers or vendors, lack of computer literacy, and other common workplace and domestic situations. *Id*.

Portier added to his appeal file a January 4, 2024 "Physician's Recommended Restrictions" form which his treating physician, Dr. Nair, completed for him. Rec. Doc. 9-11 at 18. In a letter attached to the Restrictions form, Dr. Nair opined that Portier would not be able to return "to any gainful employment due to his considerable underlying cardiac disease." *Id*. at 17. On the form, Dr. Nair also wrote that Portier has difficulty walking and standing due to shortness of breath. *Id*. at 18–19. On the form, Dr. Nair either did not answer, or responded "N/A" to many relevant

4

questions involving Portier's specific restrictions and functional capabilities. *Id*. at 18–20. For example, Dr. Nair responded "N/A" to a question concerning whether Portier could perform actions such as bending, kneeling, squatting, crawling, climbing stairs or ladders, reaching above shoulder level, working from heights, or driving and operating machinery. *Id*. at 20. Dr. Nair also responded "N/A" to questions asking how many hours that Portier could walk or sit. *Id*. at 18.

In response to Portier's appeal, Hartford obtained an Independent Physician's Report ("IPR"), dated February 13, 2024, from Dr. David A. Friedman, a board certified cardiologist. Rec. Doc. 9-4 at 33. Dr. Friedman determined that Portier's cardiac condition supported a certain level of impairment. *Id*. at 45. However, though acknowledging that the medical evidence supported that Portier was physically impaired due to his cardiac condition, Dr. Friedman nevertheless concluded that Portier's capabilities are "sustainable on a full-time (8 hrs/day, 5 days/week) basis" within the limitations he outlined related to sitting, standing, walking, reaching, and other physical activities. *Id*. at 46–47. Dr. Friedman acknowledged that Dr. Nair concluded that Portier was unable to work, but disagreed because the clinical evidence did not support an "off-work status" and because Portier could perform "work at a sedentary level as to not exacerbate reported symptoms." *Id*. at 48. When asked whether he had reviewed Portier's appeal letter which contained complaints about symptoms, however, Dr. Friedman stated that he could not locate the appeal letter. *Id*. at 47.

On May 31, 2024, after conducting a review of all materials, Hartford issued an appeal decision upholding its July 21, 2022 claim decision. Rec. Doc. 9-4 at 69. The letter noted that it considered several records, including personal statements, medical records from several treating physicians, including Dr. Nair; Portier's Social Security Notice of Award; and Dr. Friedman's IPR. *Id*. at 70. Hartford concluded based on its review that while the medical evidence supported

5

that Portier was impaired because of his cardiac condition, he nevertheless perform sedentary level work with certain restrictions and limitations. *Id*. at 71. In its appeal decision, Hartford also addressed Portier's Social Security benefits award and distinguished that award from an award of LTD benefits, noting that the standards governing the award of social security benefits differs from those that apply to the award of LTD benefits. *Id*.

On July 9, 2024, Portier sued Hartford for terminating his LTD benefits, arguing that Hartford's decision was arbitrary and capricious. Rec. Doc. 1 at 2. On March 10, 2025, Hartford filed a motion for decision on the administrative record, arguing that its decision to terminate Portier's benefits was not arbitrary and capricious but was instead supported by substantial evidence. Rec. Doc. 11. On March 12, 2025, Portier also filed a motion for judgment on the administrative record, arguing that Hartford's decision was arbitrary and capricious. Rec. Doc. 15.

II. **LAW AND ANALYSIS**

    **A. Legal Standard**

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Foster v. Principal Life Ins. Co*., 280 F. Supp. 3d 871, 897 (E.D. La. 2017). The Court applies an "abuse of discretion" standard when the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Anderson v. Cytec Indus., Inc*., 619 F. 3d 505, 512 (5th Cir. 2010). In the ERISA context, "abuse of discretion" is synonymous with "arbitrary and capricious." *Moore v. Life Ins*., 2011 WL 10453967 (E.D. La. 2011). A court's review of the factual determinations under the abuse of discretion standard is limited to the evidence contained in the administrative record. *Gooden v. Provident Life & Accident Ins*. Co., 250 F.3d 329, 333 n.5 (5th Cir. 2001). An applicant for benefits bears the initial burden of demonstrating that the denial of benefits under an

ERISA plan was arbitrary and capricious. *Foster*, 280 F. Supp. 3d at 899. A court's review of an administrator's decision is deferential. *McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 459 (5th Cir. 2014)

Importantly, under the abuse of discretion standard, the law requires only that substantial evidence support a plan administrator's decision and *not* that substantial evidence, or even a preponderance of the evidence, exists to support the employee's claim of disability. *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004). As such, the existence of contradictory evidence does not make an administrator's decision arbitrary and capricious, *see Killen v. Reliance Standard Life Ins.*, 776 F.3d 303, 308 (5th Cir. 2015), and plan administrators are even allowed to "adopt one of two competing medical views." *Gothard v. Metro Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir. 2007). Moreover, substantial evidence is "more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Corry v. Liberty Life Assur. Co. of Bos.*, 499 F.3d 389, 398–99 (5th Cir. 2007).

A court's review of an administrator's decision "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end." *Corry*, 499 F.3d at 398–99.  It is not the job of the court to disturb an administrator's decision, or substitute its judgment for that of the administrator, even if the court would have reached a different result. *McCorkle.*, 757 F.3d at 459. Instead, if a plan administrator's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail. *Ellis*, 394 F.3d at 273.

### B. Analysis – Hartford's Motion for Decision and Judgment on the Administrative Record (Rec. Doc. 11)

Hartford asserts that its decision to terminate Portier's LTD benefits was based on substantial evidence. Specifically, Hartford argues that its decision was based on all of the medical records; that it considered the opinions of its own retained medical experts as well as Dr. Nair, Portier's treating physician; and that it considered Portier's subjective complaints of pain and symptoms experienced. Rec. Doc. 11-2. Portier disagrees. He argues that Hartford did not review the appeal letter (i.e., affidavit or Verification) that he submitted with his appeal file; this failure, contends Portier, rendered Hartford's decision to terminate his benefits arbitrary and capricious. Rec. Doc. 18. Upon review of the administrative record, the Court concludes that Hartford's decision was supported by substantial evidence.

Hartford's initial claim decision is supported by substantial evidence. In its July 21, 2022 claim letter, Hartford informed Portier that it reviewed exam notes from Portier's treating physician, Dr. Nair, Rec. Doc. 9-3 at 58, as well as the medical opinion of Dr. Marhamati, who specializes in cardiovascular disease and spoke with Dr. Nair concerning Portier's condition. *Id*. Dr. Marhamati reviewed Dr. Nair's evidence and, though agreeing that some limitation was supported, found that there was "limited observable evidence that the claimant is not able to work in any capacity" based on the findings that Dr. Nair did provide. *Id*. at 21. Dr. Marhamati was also aware of Portier's complaints to Dr. Nair about his symptoms. *See, e.g.*, *id*. at 19 (detailing that Portier had reported "chest tightness with walking approximately 150 feet," reported "exertional chest discomfort and shortness of breath," and reported "intermittent lightheadedness."). There is no contention that Dr. Marhamati, or Hartford, failed to consider all relevant evidence at the initial stage. Hartford's initial decision to terminate appears based on all available evidence. While Portier may disagree with the conclusion reached, it is not for this Court to substitute its judgment for that of Hartford's.

Hartford's decision, on appeal, to uphold its initial claim decision is also supported by substantial evidence. Hartford informed Portier that it reviewed "the personal statements," as well as medical records from several doctors, an Independent Physician Review ("IPR") from Dr. Friedman, medical records from Portier's treating physician, Dr. Nair, and other records. Rec. Doc. 9-4 at 70. Dr. Friedman noted that he reviewed numerous medical records, diagnostic reports, laboratory reports, procedure reports, and notes from Portier's office visits. *Id*. at 33–38. Among the records reviewed was information from Dr. Nair, including his opinion that Portier could not work. *Id*. Dr. Friedman considered Dr. Nair's opinions and recommendation, discussed them, but ultimately disagreed with Dr. Nair's "no work" conclusion based on other evidence available in the record. *Id*. at 46. There is no evidence that Hartford, or Dr. Friedman specifically, ignored the opinion of Dr. Nair or any other treating physician. Though Dr. Nair concluded that Portier should not work, there is no "treating physician" rule in ERISA cases; in other words, a treating physician's opinion is not afforded more deference than a consulting physician's opinion. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240 (5th Cir. 2009).

Importantly, all evidence, including an applicant's self-reported complaints, should be considered. Yet the administrative record is filled with references to Portier's self-reported complaints. Hartford stated in its appeal decision letter that it considered Portier's personal statements. Rec. Doc. 9-4 at 69. Dr. Friedman was instructed to "consider self-reported symptoms reported by the claimant, family members and/or relatives" and provided an answer wherein he stated that "the claimant's reported complaints of exertional dyspnea and anginal symptoms are presented consistently through the timeframe in question." *Id*. at 46. There are other references to Portier's self-reported complaints in notes from Dr. Nair and other treating physicians, including

shortness of breath, difficulty walking or standing, knee problems, and chest pain and discomfort. *See, e.g.*, *id*. at 37–38, 40, 46, and 66.

After review of the administrative record, the Court concludes that Hartford's decision to terminate Portier's LTD benefits was supported by substantial evidence. The requirement for substantial evidence does not require that Hartford's decision be supported by a preponderance of the evidence–it need only fall somewhere on the continuum of reasonableness, even if on the low end. *Corry*, 499 F.3d at 398–99. Moreover, even if substantial evidence supports Portier's contention that he is disabled and is incapable of working, this does not change the result reached here. What matters is substantial evidence supporting Hartford's, not Portier's, position. *Ellis*, 394 F.3d at 273. Hartford's review of voluminous medical records, even those submitted by Portier's treating physician Dr. Nair, as well as its consideration of Portier's self-reported symptoms, suggests that substantial evidence supports its decision to terminate Portier's LTD benefits.

Portier takes issue with several of the opinions that the independent medical reviewers provided in this case. For example, Portier contends that Dr. Marhamati's analysis of Portier's specific limitations are "absurd on their face." Rec. Doc. 18 at 5. He challenges another doctor's summary of Dr. Nair's medical opinion as a "gross mischaracterization" and "plain ridiculous." *Id*. at 6. Even granting that Portier has legitimate critiques of the medical opinions that Hartford relied on, the Court's task is not to determine whether Hartford made the correct decision, or even to substitute its judgment for that of Hartford's. Instead, the task is merely to determine whether substantial evidence supports Hartford's decision. The Court has decided that substantial evidence does exist to support Hartford's initial and final decisions.

Portier also argues that Hartford failed to consider self-reported complaints. Rec. Doc. 18 at 9. But the record does not clearly support that conclusion. It is true that Dr. Friedman wrote that

10

he could not find the appeal letter within the medical records provided to him. Rec. Doc. 9-4 at 47. Portier's appeal letter included information concerning his prescribed medications; the effect some of those medications have on him, including drowsiness, inability to perform work, bleeding, excessive urination and frequent diarrhea; symptoms he regularly experiences such as chest pain, knee pain, shortness of breath, lightheadedness, and headaches; and examples of events that trigger his symptoms, including, for example, pressure from a boss to complete a task. Rec. Doc. 9-7 at 40–42. However, as noted, the administrative record contains several references to Portier's self-reported complaints. *See, e.g.*, Rec. Doc. 9-4 at 37–38, 40, 46, and 66. Hartford also stated in its appeal decision letter that it considered Portier's personal statements. *Id*. at 70. These references to Portier's self-reported complaints were in files and medical records which Dr. Friedman, Hartford's consulting physician, had access to and reviewed. As such, Portier's contention that Hartford ignored his subjective complaints is meritless. *See, e.g.*, *Freeman v. Hartford Life & Accident Ins. Co.*, No. CV 21-342-SDD-RLB, 2023 WL 2597893, at *10 (M.D. La. Mar. 22, 2023) (holding that because the "record contains numerous references to Plaintiff's reports of pain and the progression of his pain medication protocol from the date of the injury through the appeal process," that Plaintiff's complaint that Hartford ignored his subjective pain was meritless). Interestingly, and as noted before, Portier's own treating physician did not answer or inserted "N/A" to several relevant questions on the physician's restrictions form about specific restrictions and functional capabilities. Rec. Doc. 9-11 at 18–20.

Portier's other challenges to Hartford's termination of his LTD benefits are equally unsustainable. First, Portier argues that the EAR is flawed because several of the tasks associated with the proposed job of a Maintenance Superintendent (a/k/a Shop Superintendent) are beyond his physical capabilities. Rec. Doc. 18 at 15. However, Portier's critique is based on a misreading

11

of the EAR. Portier focuses exclusively on 30 "Core Tasks" that are included in the EAR and argues that it is "inconceivable" that several tasks of those tasks would not involve extensive walking and otherwise go beyond his restrictions. *Id*. at 14–15. However, the EAR associate those tasks with the O*NET Title of "Transportation, Storage, and Distribution Managers." Rec. Doc. 9-13 at 27–29. The O*NET Title of "Transportation, Storage, and Distribution Managers" is a broad classification which encompasses several different job titles, and it is not a given that each of those jobs would require an employee to be capable of performing all 30 Core Tasks. *Id*. at 27. The EAR instead only lists four tasks under Maintenance Supervisor, which include directing and coordinating activities, purchasing parts and recording expenditures, determining specifications for new equipment, directing construction of truck bodies, and contracting for repair services. Rec. Doc. 9-13 at 27.

  Second, Portier argues that Hartford was procedurally unreasonable. Rec. Doc. 18 at 16. He states that Hartford's failure to provide its own expert with important evidence (presumably referring to Hartford's alleged failure to provide Dr. Friedman with his appeal letter) constituted procedural unreasonableness. *Id*. at 16. In a case, such as this one, where the insurer of the plan also determines whether the claimant is entitled to benefits, a conflict of interest arises. *White v. Life Ins. Co. of N. Am*., 892 F.3d 762, 767 (5th Cir. 2018). In such a scenario, a court must determine the weight to give to the conflict of interest in the overall review of the administrator's decision. *Id*. Such a conflict "should prove more important…where circumstances suggest a higher likelihood that it affected the benefits decision." *Id*. In *White*, the insurer's failure to acknowledge or address a medical report and additional failure to provide it to the insured constituted procedural unreasonableness which warranted placing greater weight on the insurer's conflict of interest. *Id*. at 768. The court found that even if substantial evidence supported the insurer's decision, the

procedural unreasonableness of its actions warranted holding that the insured abused its discretion. *Id.* at 771.

However, *White* is distinguishable from this case. First, and importantly, there is no evidence that Hartford failed to address or consider Portier's personal statements regarding his self-reported complaints. As noted, Hartford acknowledged Portier's personal statements when rendering its decision on appeal. Rec. Doc. 9-4 at 70. In *White*, however, the insurer did not address or even seem to acknowledge a relevant medical report in its denial. *White*, 892 F.3d at 768. Additionally, as noted, the administrative record makes clear that Dr. Friedman was aware of and considered Portier's personal complaints. *See, e.g.,* Rec. Doc. 9-4 at 37–38, 40, 46, and 66. Finally, in *White*, the insurer failed to provide the relevant medical report to the insured. *White*, 892 F.3d at 768–69. Here, however, Portier was already in possession of his appeal letter, and there's no contention that Portier was without relevant information to fully appeal Hartford's initial decision. The evidence available to the Court does not suggest that Hartford was procedurally unreasonable in rendering its final decision on appeal.

Based on the above, Hartford's decision on appeal to affirm its July 21, 2022 claim decision was supported by substantial evidence and not arbitrary or capricious. As such, Hartford's motion for judgment on the administrative record is **GRANTED**.

### C. Analysis – Portier's Motion for Judgment on ERISA Administrative Record (Rec. Doc. 15)

Portier's memorandum in support of his request for judgment on the administrative record provides the same arguments as those included in his opposition to Hartford's motion. Rec. Doc. 15-1. Specifically, Portier argues that Hartford's decision was arbitrary and capricious since it presumably failed to provide his appeal letter to its reviewing physician and disregarded credible

evidence, including the opinion of his treating physician, Dr. Nair. *Id*. at 40–43. We reject this argument here for the same reasons given in the analysis of Hartford's motion.

There is no record evidence that Hartford disregarded the opinion of Dr. Nair or any other treating physician. Instead, Hartford noted in both its initial and appellate decision letters that it considered Dr. Nair's opinions. Rec. Doc. 9-3 at 58; Rec. Doc. 9-4 at 70. Dr. Friedman also reviewed and discussed Dr. Nair's medical opinions in his initial IPR and in a later addendum. Rec. Doc. 9-4 at 47, 66. Second, as discussed, Hartford stated in its appeal letter that it reviewed Portier's personal statements, and the administrative record is replete with references to Portier's self-reported complaints. *See, e.g.,* Rec. Doc. 9-4 at 37–38, 40, 46, and 66. There is no evidence that Hartford disregarded, refused to consider, or "cherry picked" relevant evidence to favor its own decision. Instead, substantial evidence exists to support Hartford's decision on appeal to affirm its July 21, 2022 claim decision terminating Portier's LTD benefits. Even with partial concurrence in Portier's interpretation of the record, the record as a whole revealed substantial evidence, as discussed above, that supports the termination decision.

For the reasons provided, Portier's motion for judgment on the administrative record is **DENIED**.

New Orleans, Louisiana, this 7th day of January 2026

                                                                    Senior United States District Judge